UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00034-TBR

DEBORAH SMITH,     Plaintiff

v.

LIBERTY MUTUAL INSURANCE COMPANY     Defendant

**MEMORANDUM OPINION**

This matter is before the Court upon Defendant's motion for summary judgment. (Docket #13). Plaintiff has responded. (Docket #17). Defendant has replied. (Docket #20). These matters now are ripe for adjudication. For the following reasons, Defendants' motion (Docket #13) will be GRANTED.

BACKGROUND

On July 31, 2014, Plaintiff Deborah Smith was driving in Louisville, Kentucky near the intersection of Dixie Highway and Katherine Station Road. As Smith approached the intersection, she saw Wyatt Bean "barreling down" on her. (Docket #13-3). Smith attempted to move over but was struck by Bean. The impact pushed Smith's car into oncoming traffic, where Smith's car was struck head-on by another vehicle. Smith suffered broken ribs, a broken femur, and several other injuries. Smith spent four days in the hospital and underwent physical therapy for several months. Smith's medical bills exceeded $150,000. (Docket #17). Smith made a claim with Bean's insurance carrier who subsequently paid policy limits.

This case arises out of Smith's insurance policy with her own insurance carrier, Defendant Liberty Mutual Insurance Company ("Liberty Mutual"). This policy provided

Smith with underinsured motorist coverage up to $100,000. Liberty Mutual has paid these policy limits and the parties have settled Smith's breach of contract claim. (Docket #12). Remaining in this case are Smith's claims that Liberty Mutual acted in bad faith in investigating and settling Smith's claim, thereby violating the Kentucky Unfair Claims Settlement Practices Act and the Kentucky Consumer Protection Act. Liberty Mutual now moves for summary judgment on Smith's bad faith claims. Liberty Mutual argues summary judgment is warranted because Smith has not suffered damages and because Smith has failed to show outrageous conduct on behalf of Liberty Mutual.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d

1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

## DISCUSSION

Liberty Mutual raises two arguments for why summary judgment is warranted on Smith's bad faith claim: (I) Smith has failed to show outrageous conduct; and (II) Smith has no damages. Both of Liberty Mutual's arguments have merit.

### I.     **Outrageous Conduct.**

In *Wittmer v. Jones*, the Kentucky Supreme Court "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation." *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). The "three required elements of a cause of action for bad faith as follows:

> (1) The insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Id*. (*quoting Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

"Before the cause of action for bad faith exists in the first place, there must be evidence sufficient to warrant punitive damages." (punctuation omitted) *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003). "[I]n order to justify an award of punitive damages, there must be proof of bad faith sufficient for the jury to conclude that there was conduct that was outrageous, because of the defendant's evil motive, or his reckless indifference to the rights of others." *Phelps v. State Farm Mut. Auto. Ins. Co.*,

3

736 F.3d 697, 703 (6th Cir. 2012) (calling this "a high threshold standard"). "[T]here can be no private cause of action for a mere 'technical violation' of the UCSPA." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997).

Smith alleges Liberty Mutual acted in bad faith in being slow to investigate and settle Smith's claim and attempting to "low ball" her. (Docket #17). The Court finds that, viewing the facts in the most favorable light towards Smith, they still fall short of the high standard for a bad faith claim.

According to Smith, she "immediately" called Liberty Mutual to make a claim following the accident on July 31, 2014. (Docket #17). On August 6, 2014, Liberty Mutual sent a letter to Smith requesting documentation of this claim. (Docket #18-6). On September 3, Liberty Mutual requested that Smith execute a medical authorization form and requested an appointment with Smith to discuss the accident. (Docket #18-7). On September 22, Liberty Mutual requested information about lost wages and again requested an interview with Smith. (Docket #18-9).

Smith admits she waited until November 10, 2014 to make a "formalized" demand because Smith "did not want the Liberty Mutual claim to become entangled with negotiations with Blue Cross Blue Shield over its ERISA lien." (Docket #17, 18-10). Liberty Mutual responded on December 4 that it was "still attempting to finalize our liability investigation by getting statements from one or more witnesses to include the primary tort feasor, Wyatt Bean." (Docket 18-12). Liberty Mutual stated it would continue its efforts to contact witnesses as "Ms. Smith has limited memory of what exactly happened." (Docket #18-12). Liberty Mutual also stated it was investigating

4

liability because Liberty Mutual interviewed Smith and Smith "herself admitted that she switched lanes to put herself directly in front of Mr. Bean." (Docket #18-3). On December 10, Smith's attorney demanded "a definitive answer immediately or I will advise my client to file a complaint with the Commissioner of Insurance, and I will file the lawsuit that I have already prepared." (Docket #18-14). On December 16, Smith filed the present lawsuit asserting breach of contract and bad faith. (Docket #1-2). In February, 2015, Liberty Mutual and Smith settled the breach of contract claim and Liberty Mutual paid the full $100,000 policy limits to Smith. (Docket #13-3).

Kentucky courts have consistently stressed that the "evidentiary threshold is high indeed" to show bad faith:

> Evidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights. Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury. Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown. *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003)

Smith argues Liberty Mutual acted unreasonably when it investigated the possibility that Smith may have contributed to the accident. However, an insurer is entitled to investigate and dispute a debatable claim.[1]  *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Smith also argues Liberty Mutual "was trying to low ball her." (Docket #17). However, Liberty Mutual paid Smith the full $100,000 and Smith does not recall Liberty Mutual ever offering less than policy limits. (Docket 13-3, p. 29). At most, Smith has

---

[1] Liberty Mutual stresses that Smith signed a settlement agreement which described Smith's claim as "disputed and doubtful." (Docket #13-4).

5

shown that Liberty Mutual was slow in settling Smith's claim. Kentucky courts regularly find that a delay in payment, without more, does not justify submitting a bad faith claim to a jury. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). This is especially true when the insured received full benefits under the policy. *Bult*, 183 S.W.3d at 189-90 (finding insufficient evidence of bad faith where the insurer "did not deny a single claim; nor did it deny the limits of coverage in the Bults' policy. In essence, the Bults' claim of bad faith narrows down to a delay in their receipt of those payments"). Smith has received all of the benefits she is entitled to and has not demonstrated that Liberty Mutual acted with evil motive or malice. Accordingly, summary judgment will be entered in favor of Liberty Mutual.

## II. Damages.

Liberty Mutual also argues Smith's claim must be dismissed because Smith has suffered no damages. The Court has found that Smith has not established that Liberty Mutual acted in an outrageous manner. The Court also finds that Smith has suffered no damages attributable to Liberty Mutual.

Smith claims she has been damaged by having to take a $22,000 loan from her employer. Smith's employer advanced Smith $2,000 every two weeks during the period Smith was unable to work. Smith began repaying this loan when she returned to work. (Docket #13-3). The loan is interest-free. Smith does not explain how receiving and repaying an interest-free loan has caused her damages. *See generally Dickman v. C.I.R.*, 465 U.S. 330 (1984) (holding in a gift tax case that interest-free loans are a taxable benefit to the receiver of that loan).

Smith also attributes her bankruptcy to Liberty Mutual's failure to timely pay the claim. This argument is undercut by the fact that Smith had filed for bankruptcy prior to the accident. On November 18, 2010, Smith filed for a Chapter 13 bankruptcy. Smith bankruptcy progressed until August 8, 2014, when Smith made a motion to suspend payments citing her car accident. Smith allegedly intended to convert her bankruptcy to Chapter 7, but Smith did not and her bankruptcy was dismissed on February 12, 2015 for failure to make payments. On March 4, 2015, Smith filed for Chapter 7 bankruptcy. This second bankruptcy filing occurred after the parties had settled and therefore it is difficult to attribute to Liberty Mutual. Furthermore, Smith's current bankruptcy attorney opines that the problems regarding Smith's first bankruptcy were caused by Smith's first bankruptcy attorney's failure to communicate and properly administer Smith's case. (Docket #18-16). In short, Smith offers no plausible explanation for how her bankruptcy was caused by Liberty Mutual.

Smith claims she lost "$60.00 to $100.00" in start-up costs for a new business. Smith also claims she was traveling to Shepherdsville for a part-time job when the accident occurred and lost that opportunity. These damages arise from the accident and any recovery would have to come from that tortfeasor. They do not arise from Liberty Mutual's alleged bad faith.

Finally, Smith claims she suffered emotional damages. Smith argues that "incurring debt, especially debt brought on through no fault of one's own, is distressing." (Docket #17). Smith also argues she suffered stress from filing for bankruptcy. While

7

this is no doubt true, as the Court explained above, these damages cannot be attributed to Liberty Mutual.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket #13) will be GRANTED.

A separate judgment and order shall issue.

cc:     Counsel

---

[2] In her deposition, Smith appears to be confused as to which damages are attributable to Bean and her claims against Liberty Mutual:

>   Q:   . . . Liberty Mutual has now paid you the $100,000 policy limits on the underinsured motorist coverage, correct?
>   A:   Yes.
>   Q:   And you understand that's all – that that was the limits of that coverage, correct?
>   A:   Yes.
>   Q:   Okay.  All that being said, now why do you – what do you think Liberty–
>   A:   Because I have long-term injuries.
>   Q:   So it's not enough money?
>   A:   I don't think so.
>   Q:   Any other reason you sued Liberty Mutual other than you think they didn't pay you enough money?
>   A:   For my injuries, no.
>   Q:   Okay.  Did they pay what they paid you quickly enough, in your opinion?
>   A:   Yes.

(Docket #13-3, p. 7).